# Exhibit A



**ARBITRATION
AND
MEDIATION CENTER**

## ADMINISTRATIVE PANEL DECISION

NET Holding A.Ş., Merit Turizm Yatirim ve Işletme A.Ş. v. efe ates, Bohnny Yildiray, Andreous Theoklis, Arnica Solutions LTD, Aslan Dudayev
Case No. D2026-0852

### 1. The Parties

The Complainants are NET Holding A.Ş. ("First Complainant") and Merit Turizm Yatirim ve Işletme A.Ş. ("Second Complainant"), Türkiye, represented by Sołtysiński Kawecki & Szlęzak, Poland.

The Respondents are efe ates, Türkiye ("First Respondent"), Bohnny Yildiray, United States of America ("Second Respondent"), Andreous Theoklis, Arnica Solutions LTD, United Kingdom ("Third Respondent"), and Aslan Dudayev, United Kingdom ("Fourth Respondent").

### 2. The Domain Names and Registrars

The disputed domain names <merit.bet>, <meritbet.app>, <meritbet.co>, and <meritbetegirisyap.com> are registered with NameCheap, Inc., and the disputed domain name <meritbetr.com> is registered with NameSilo, LLC (the "Registrars").

### 3. Procedural History

The Complaint was filed with the WIPO Arbitration and Mediation Center (the "Center") on February 26, 2026.  On February 27, 2026, the Center transmitted by email to the Registrars requests for registrar verification in connection with the disputed domain names.  On February 27, 2026, and March 2, 2026, the Registrars transmitted by email to the Center their verification responses disclosing registrant and contact information for the disputed domain names which differed from the named Respondents (Privacy Service Provided by Withheld for Privacy ehf, See PrivacyGuardian.org) and contact information in the Complaint.

The Center sent an email communication to the Complainants on March 2, 2026, with the registrant and contact information of nominally multiple underlying registrants revealed by the Registrars, requesting the Complainants to either file separate complaints for the disputed domain names associated with different underlying registrants or alternatively, demonstrate that the underlying registrants are in fact the same entity and/or that all domain names are under common control.  The Complainants filed an amended Complaint on March 4, 2026.

The Center verified that the Complaint together with the amended Complaint satisfied the formal requirements of the Uniform Domain Name Dispute Resolution Policy (the "Policy" or "UDRP"), the Rules for Uniform Domain Name Dispute Resolution Policy (the "Rules"), and the WIPO Supplemental Rules for Uniform Domain Name Dispute Resolution Policy (the "Supplemental Rules").

In accordance with the Rules, paragraphs 2 and 4, the Center formally notified the Respondents of the Complaint, and the proceedings commenced on March 24, 2026.  In accordance with the Rules, paragraph 5, the due date for Response was April 13, 2026.  The Respondents and the Complainants sent email communications to the Center between March 4, 2026, and March 16, 2026.

The Center appointed Jeremy Speres as the sole panelist in this matter on April 16, 2026.  The Panel finds that it was properly constituted.  The Panel has submitted the Statement of Acceptance and Declaration of Impartiality and Independence, as required by the Center to ensure compliance with the Rules, paragraph 7.


## 4. Factual Background

The Complainants are joint stock companies existing under the laws of Türkiye, active in the hospitality, casino, gaming, and betting sectors in Türkiye, Montenegro, Croatia and Bulgaria.  Both Complainants are listed on the Istanbul Stock Exchange.  The Second Complainant is a subsidiary of the First Complainant and was founded in 1988.  The Complainants operate under the MERIT trademark, which a prior panel under the Policy has recognized as having "goodwill".  See *Merit Turizm Yatirim Ve Isletme Anonim Sirketi v. Fedlan Kilicaslan, G&F Company Group NV / Redsoft N.V*, WIPO Case No. D2017-1398.

The Complainants operate websites hosted at the following domain names <netholding.com> (registered in 1997) and <merithotels.com> (registered in 1997).

The Complainants own various trademark registrations for MERIT-incorporating trademarks, including:

- International Trademark Registration No. 1725494 MERIT (device) in classes 09, 41, and 42, in the name of the Second Complainant, having a registration date of December 23, 2022, designating, amongst others, the United Kingdom and the European Union;

- Turkish Trademark Registration No. 2006 10901 MERIT (device) in classes 12, 14, 16, 18, 21, 22, 24, and 25, in the name of the Second Complainant, having a registration date of April 25, 2007;  and

- European Union Trademark Registration No. 016172389 MERIT ROYAL HOTEL & CASINO & SPA (device) in classes 9, 16, 21, 24, 28, 33, 35, 36, 37, 38, 40, 41, and 43, in the name of the First Complainant, having a registration date of May 24, 2017.

The Complainants' evidence establishes that all of the disputed domain names have in the past resolved to websites that either offered gambling and/or betting services under the brand "Meritbet" which were targeted at users in Türkiye and featured replicas of the Complainants' cross logo or similar variants, or redirected users to such websites.

Registration details and present usage of the disputed domain names are as follows:

- <merit.bet>, registered in the name of the Third Respondent, registered on November 2, 2024, presently resolves to a website including a disclaimer stating, amongst other things, that the Complainants do not offer any online casinos or betting services;

- <meritbet.co>, registered in the name of the First Respondent, registered on October 10, 2024, presently resolves to a website stating:  "Sorry, you have been blocked";

- <meritbet.app>, registered in the name of the First Respondent, registered on August 19, 2025, presently resolves to a website in Turkish entitled "MERITBET" featuring a replica of the Complainants' cross logo and offering casino and betting services;

- <meritbetegirisyap.com>, registered in the name of the Fourth Respondent, registered on October 10, 2025, presently resolves to a website in Turkish entitled "MERITBET" informing users how to access various betting websites operating under the "MERITBET" brand, some of which utilize a replica of the Complainant's cross logo;  and

- <meritbetr.com>, registered in the name of the Second Respondent, registered on March 7, 2025, presently does not resolve to any website.

## 5. Parties' Contentions

### A. Complainants

The Complainants contend that they have satisfied each of the elements required under the Policy for a transfer of the disputed domain names.

Notably, the Complainants contend that the disputed domain names have all been registered and used in bad faith in order to take advantage of confusion amongst users as to the origin of the services offered at the disputed domain names for the commercial gain of the Respondents.

### B. Respondents

None of the Respondents responded formally to the Complainants' contentions.  Two Respondents submitted informal communications.

The Third Respondent objected to the consolidation of the disputed domain name <merit.bet> into the Complaint on the basis that, amongst others, the Third Respondent is a separate entity and has no relationship with any of the other Respondents.  The Third Respondent denied any bad faith, notably on the basis that "Merit" is a common dictionary term and the Third Respondent acquired the disputed domain name <merit.bet> in an auction in the ordinary course of domain name investing.  The Third Respondent's commercial rationale was "to hold a premium generic asset, improve its positioning, and ultimately sell it".  The Third Respondent claims to have placed an informational notice on the website of the disputed domain name <merit.bet> "to prevent any possible misunderstanding by visitors".

The Second Respondent unconditionally consented to transferring the disputed domain name <meritbetr.com> to the Complainants, and objected to the Complainants' consolidation request in respect of that disputed domain name, arguing that there is no common control with the other Respondents due to differing registrars and registration dates, amongst other things.

## 6. Discussion and Findings

### A. Consolidation:  Multiple Complainants

Section 4.11.1 of the WIPO Overview of WIPO Panel Views on Select UDRP Questions ("WIPO Overview 3.1") summarizes the consensus view of UDRP panels on the consolidation of multiple complainants, in part, as follows:  "In assessing whether a complaint filed by multiple complainants may be brought against a single respondent, panels look at whether (i) the complainants have a specific common grievance against the respondent, or the respondent has engaged in common conduct that has affected the complainants in a similar fashion, and (ii) it would be equitable and procedurally efficient to permit the consolidation."

The Complainants are related corporate entities and have a common legal interest sufficient to justify consolidation.  As discussed below, the Respondents have engaged in targeting of both Complainants.

The Panel thus accepts consolidation of the multiple Complainants, and will refer to them both together as the "Complainant" hereinafter.

**B. Consolidation:  Multiple Respondents**

The amended Complaint was filed in relation to nominally different domain name registrants.  The Complainant alleges that the domain name registrants are the same entity or mere alter egos of each other, or under common control.  The Complainant requests the consolidation of the Complaint against the multiple disputed domain name registrants pursuant to paragraph 10(e) of the Rules.

Paragraph 3(c) of the Rules states that a complaint may relate to more than one domain name, provided that the domain names are registered by the same domain name holder.

In addressing the Complainant's request, the Panel will consider whether (i) the disputed domain names or corresponding websites are subject to common control;  and (ii) the consolidation would be fair and equitable to all Parties.  See WIPO Overview 3.1, section 4.11.2.

As regards common control, the Panel notes the following.  Two of the disputed domain names are registered in the name of the First Respondent.  All of the disputed domain names have been used for the same purpose, specifically, to provide gambling and/or betting services under the "MERITBET" brand, or to redirect users to such websites.  Four of the disputed domain names share the same registrar.  The disputed domain names were all registered in 2024 or 2025.  All of the disputed domain names' compositions incorporate the term "meritbet", noting that <merit.bet> has that term "spanning the dot" across the Top-Level Domain and the second level portion.  See WIPO Overview 3.1, section 1.11.3.

The Third Respondent's objections to consolidation are perfunctory, not supported by evidence, and are contradicted by the Complainant's evidence showing that in prior proceedings under the Policy where the First Respondent was cited as a respondent and was found to have targeted the Complainant, the First Respondent relied on trademark applications filed by the Third Respondent.  See *NET Holding A.Ş., Merit Turizm Yatirim ve Işletme A.Ş. v. Gene M Bleich, seo, efe ates, Kerim Balci*, WIPO Case No. D2025-4195. This suggests a common connection between the First and Third Respondents.

It is not necessary to consider the Second Respondent's objections to consolidation given that the Second Respondent has unconditionally consented to transfer of the disputed domain name <meritbetr.com> to the Complainant, and it is sufficient for the Panel to order transfer on this basis alone.  See WIPO Overview 3.1, section 4.10.  In any event, the Panel finds the Second Respondent's objections unconvincing in that they, too, are cursory and unsupported by evidence.

The remainder of the Respondents have not responded to the Complainant's consolidation request and there is therefore no denial of common control from these Respondents in the record.

In the circumstances, the Panel considers it likely that the disputed domain names are under common control.

As regards fairness and equity, the Panel sees no reason why consolidation of the disputes would be unfair or inequitable to any Party, especially given that three of the five Respondents have not incurred the costs of responding, and one of the remaining two Respondents has consented to transfer.

Accordingly, the Panel decides to consolidate the disputes regarding the nominally different disputed domain name registrants (referred to below as "the Respondent") in a single proceeding.

**C. Supplemental Filings**

Given the absence of formal responses from the Second and Third Respondents, and in the interests of giving all Parties a fair opportunity to present their case, the Panel accepts the informal communications from the Second and Third Respondents and considers them their Responses.

The Complainant filed unsolicited supplemental filings between March 4, and March 16, 2026, in response to the Responses from the Second and Third Respondents.

Paragraphs 10 and 12 of the Rules in effect grant the Panel sole discretion to determine the admissibility of unsolicited supplemental filings.  Admissibility of supplemental filings is to be assessed based on relevance, foreseeability, the need to conduct the proceedings with due expedition, and the equal treatment of the parties so that each has a fair opportunity to present its case.  Paragraphs 10(b) and (c) of the Rules; *Societé aux Loteries en Europe, SLE v. Take That Ltd.*, WIPO Case No. D2007-0214;  WIPO Overview 3.1, section 4.6.

In this case, the Complainant's supplemental filings are rebuttals of the Second and Third Respondents' contentions, however, the Panel notes that the allegations in the Responses could not all have been anticipated by the Complainant.  The Panel further notes that the supplemental filings did not significantly delay these proceedings.  The Panel therefore admits the Complainant's supplemental filings.

**D. Identical or Confusingly Similar**

It is well accepted that the first element functions primarily as a standing requirement.  The standing (or threshold) test for confusing similarity involves a reasoned but relatively straightforward comparison between the Complainant's trademark and the disputed domain name.  WIPO Overview 3.1, section 1.7.

The Complainant has shown rights in respect of a trademark or service mark for the purposes of the Policy. WIPO Overview 3.1, section 1.2.1.

The Panel finds the mark is recognizable within the disputed domain names.  Accordingly, the disputed domain names are confusingly similar (and identical, in the case of <merit.bet>) to the mark for the purposes of the Policy.  WIPO Overview 3.1, section 1.7.

Although the addition of other terms (here, "bet", "egirisyap", and "betr") may bear on assessment of the second and third elements, the Panel finds the addition of such terms does not prevent a finding of confusing similarity between the disputed domain names and the mark for the purposes of the Policy. WIPO Overview 3.1, section 1.8.

The Panel finds the first element of the Policy has been established.

**E. Rights or Legitimate Interests**

Paragraph 4(c) of the Policy provides a list of circumstances in which the Respondent may demonstrate rights or legitimate interests in a disputed domain name.

Although the overall burden of proof in UDRP proceedings is on the complainant, panels have recognized that proving that a respondent lacks rights or legitimate interests in a domain name may result in the difficult task of "proving a negative", requiring information that is often primarily within the knowledge or control of the respondent.  As such, where a complainant makes out a prima facie case that the respondent lacks rights or legitimate interests, the burden of production on this element shifts to the respondent to come forward with relevant evidence demonstrating rights or legitimate interests in the domain name (although the burden of proof always remains on the complainant).  If the respondent fails to come forward with such relevant evidence, the complainant is deemed to have satisfied the second element.  WIPO Overview 3.1, section 2.1.

Having reviewed the available record, the Panel finds the Complainant has established a prima facie case that the Respondent lacks rights or legitimate interests in the disputed domain names. The Respondent has not rebutted the Complainant's prima facie showing and has not come forward with any relevant evidence demonstrating rights or legitimate interests in the disputed domain names such as those enumerated in the Policy or otherwise.

In respect of the contentions around legitimate interests made by the Third Respondent, his claims are unsupported by evidence and are unconvincing. No evidence is provided supporting the Third Respondent's contention that he registered the disputed domain name <merit.bet> for its semantic value as part of a domain name investing portfolio. In this regard, he could quite easily have provided evidence of his portfolio, showing other similar investments.

While "merit" is a dictionary term, it was not used in its dictionary sense on the Third Respondent's erstwhile website, and was in fact used in a brand sense in competition with the Complainant, contradicting the Third Respondent's claims based on the semantic value of the term.

Per the WIPO Overview 3.1, section 2.10.1:

"Although panels have not found it strictly necessary for the disputed domain name to be used to host content that corresponds to the dictionary meaning, such use would support a respondent's attempt to rebut the claim made against it of a lack of a right or legitimate interest. As long as the disputed domain name is being used in a way that does not trade off the complainant's trademark (whether to host links, content, a landing or sales page, or hosting no content at all), and where there are no other indicia of cybersquatting, such use may support the respondent's claim to a right or legitimate interest."

Furthermore, the Third Respondent filed a trademark application[1] in Brazil for a MERITBET trademark that incorporates a close replica of the Complainant's cross logo, pointing to targeting of the Complainant.

The Panel therefore does not accept the Third Respondent's contentions in this regard.

For the reasons discussed in relation to bad faith below, it is likely that the Respondent registered the disputed domain names to take advantage of confusion with the Complainant's mark. The Respondent's registration and use of the disputed domain names in these circumstances cannot represent a bona fide offering of goods or services under paragraph 4(c (i) of the Policy and cannot confer rights or legitimate interests. *Sistema de Ensino Poliedro Vestibulares Ltda., Editora Poliedro Ltda. v. Anonymize, Inc. / STANLEY PACE*, WIPO Case No. D2022-1981.

The Panel finds the second element of the Policy has been established.

**F. Registered and Used in Bad Faith**

The Panel notes that, for the purposes of paragraph 4(a)(iii) of the Policy, paragraph 4(b) of the Policy establishes circumstances, in particular, but without limitation, that, if found by the Panel to be present, shall be evidence of the registration and use of a domain name in bad faith.

For the following reasons, the Panel finds that it is more likely than not that the Respondent registered and has used the disputed domain names to take advantage of confusion with the Complainant's mark for the Respondent's commercial gain, falling squarely within paragraph 4(b)(iv) of the Policy.

The Complainant's MERIT mark enjoys a reputation within the same industry and within the same country targeted by the disputed domain names' websites, namely the casino and betting industry in Türkiye.

---

[1] Brazilian Trademark Application No. 940596385 MERITBET (device) in class 41 in the name of ARNICA SOLUTIONS LTD, having an application date of August 14, 2025.

All of the disputed domain names' websites have in the past used a logo that is a close replica of the Complainant's or is quite similar to it, or have redirected to websites that make use of such a logo.

The compositions of the disputed domain names all include the Complainant's MERIT mark plus the term "bet", which relates to the Complainant's industry.

The First Respondent has been found to have targeted the Complainant in similar circumstances in the past. See *NET Holding A.Ş., Merit Turizm Yatirim ve Işletme A.Ş. v. Gene M Bleich, seo, efe ates, Kerim Balci*, WIPO Case No. D2025-4195.  Given the Panel's findings of likely common control across all of the disputed domain names, this history of targeting of the Complainant is likely relevant to all of the disputed domain names despite being registered in the name of nominally different registrants.

The Panel finds that the Complainant has established the third element of the Policy.


**7. Decision**

For the foregoing reasons, in accordance with paragraphs 4(i) of the Policy and 15 of the Rules, the Panel orders that the disputed domain names <merit.bet>, <meritbet.app>, <meritbet.co>, <meritbetegirisyap.com>, and <meritbetr.com> be transferred to the Complainant.


*/Jeremy Speres/*
**Jeremy Speres**
Sole Panelist
Date:  April 29, 2026